W. SCOTT HUNT, ADMINISTRATOR OF THE ESTATE OF DAVID ELDER HUNT, DECEASED, v. STATE OF NORTH CAROLINA, ADJUTANT GENERAL'S DEPARTMENT, SELF-INSURER.

(Filed 25 November, 1931.)

1. **Master and Servant F b—Definition of words "arising out of and in the course of the employment" as used in the Compensation Act.**

   The terms "out of" and "in the course of the employment" as used in the Workmen's Compensation Act are not synonymous; the words "in the course of" refer to the time, place, and circumstances under which the accident occurs, and the words "out of" to its origin, it being necessary that the risk be incidental to the employment.

2. **Same—Whether accident arises out of the employment is usually a mixed question of law and fact.**

   Whether an accident arises out of the employment is usually a mixed question of fact and law, but if the facts are admitted and the case does not depend upon inferences of fact to be drawn therefrom, the question is one of law.

3. **Same—Injury in this case held not to have arisen out of and in the course of the employment.**

   A member of the North Carolina National Guard acting under the order of his superior officer, as he was required to do, attempted to go into encampment at a certain place some distance from his home by means of an automobile furnished at his own expense, and while his pay for the military district camp began when he began his journey, there was no agreement either express or implied that the government would furnish the transportation, *Held:* an injury resulting in death received in an accident occurring en route did not arise out of his employment by the State Government and is not compensable under the provisions of the Workmen's Compensation Act. The distinction between an accident arising in the course of the employment and arising out of the employment is pointed out by ADAMS, J.

APPEAL by defendant from *Small, J.,* at September Term, 1931, of WAKE.

The defendant appealed from a judgment of the Superior Court reversing an order of the Industrial Commission which denied compensation for personal injury and death by accident arising out of and in the course of the employment of the plaintiff's intestate as a member of the North Carolina National Guard. The Industrial Commission denied compensation upon the facts found by it, a concise statement of which is as follows: At the time of the injury the deceased was a member of the North Carolina National Guard and was serving a second enlistment in the First Battalion Headquarters Company of the North Carolina National Guard located at Oxford. E. E. Fuller was

the commanding officer of the company. Pursuant to orders from the military authorities of the State and the United States the company was ordered to go to Morehead City on 6 July, 1930, for military services connected with the annual encampment of the North Carolina National Guard. Transportation was furnished for the company by the War Department of the United States on trains of the Seaboard Air Line and the Norfolk-Southern Railway Company. It had been the custom of the military authorities to authorize and direct designated members of the military units to proceed to the place of the annual encampment of the National Guard in advance of the unit or company, or subsequently thereto, in such way as the military authorities authorized or permitted. In accordance with this custom the commanding officer gave the deceased a leave of absence during the first week of the encampment and ordered him to report for duty at Camp Glenn on 13 July, 1930, at 6 a.m. At that time the commanding officer knew that the deceased was in the employ of druggists in Oxford; that his duties required him to remain there in his work until 11 p.m. on 12 July, 1930; and had cause to believe that he would travel to the Camp at Morehead City by automobile. The deceased left Oxford at 11:15 p.m. 12 July, and proceeded on the nearest and most direct route to Morehead City. At 1:30 a.m. between Raleigh and Clayton on State Highway No. 10 he suffered an injury by accident in a collision between his automobile and another automobile on the highway. As a result of the injury death followed. The deceased was 19 years of age and left no one either wholly or partially dependent on his earnings for support. W. Scott Hunt is his administrator. The average weekly earnings of deceased at the time of his death were $18.88 in civil employment. Under the terms of his enlistment he was required to obey the orders of his commanding officer and to leave his home in Oxford and to proceed to Camp Glenn in time to report by 6 o'clock a.m. on 13 July, 1930. Transportation was furnished by the deceased and not by the employer. The injury which resulted in death occurred during the period of employment of the deceased who was entitled to receive compensation from the time he left his home in Oxford and who would have received pay for that time if he had lived.

The Industrial Commission affirmed the award of Commissioner Wilson denying the claimant compensation, holding that the accident occurred during the course of the employment of the deceased but that it did not arise out of the employment; that had transportation been furnished by the employer the claimant would be entitled to compensation, but that the evidence is to the effect that the cost of transportation from Oxford to Morehead City would not have been paid by the em-

ployer but was a private matter with the National Guardsman himself.

From this order of the Industrial Commission the claimant appealed to the Superior Court which reversed the order of the Commission, the judge holding that the claimant was entitled to compensation. From the judgment of the Superior Court the defendant appealed, assigning error.

*Attorney-General Brummitt and Assistant Attorneys-General Seawell and Siler for appellant.*

*Royster & Royster and Parham & Lassiter for appellee.*

ADAMS, J. By the terms of the North Carolina Workmen's Compensation Act compensation may be paid to an employee or in case of his death to his dependents or legal representatives for personal injury by accident arising out of and in the course of his employment. Code, 1931, sec. 8081(i), (b), (f), (j), (k). We have said in previous decisions that it is not easy to give the phrase "out of and in the course of the employment" an accurate definition within which all facts calling for an application of the provisions of the act may be embraced. Obviously the terms are not synonymous; probably the one was meant to qualify the other.

The Industrial Commission was of opinion that the deceased at the time of the accident was in the course of his employment, drawing its conclusion from evidence that the deceased, had he lived, would have received pay from the time he left Oxford. The Superior Court adjudged that the injury arose out of and in the course of the employment.

The words "out of" as used in the act refer to the origin or cause of the accident. Whether the accident arose out of the employment is usually a mixed question of fact and law; but if the facts are found or are not in dispute and the case does not depend upon inferences of fact to be drawn from the facts admitted the question is not one of fact but of law. *Conrad v. Foundry Co.,* 198 N. C., 723; *Harden v. Furniture Co.,* 199 N. C., 733; Willis's Workmen's Compensation, 16.

The accident occurred on a public highway between one and two o'clock at night while the deceased was on his way to Camp Glenn. He was riding in his own car; the defendant had nothing to do with his mode of travel. It was his duty to obey the order of the commanding officer to go to the camp, but he had no work to do until he got there. He was to report his presence at six o'clock in the morning, and then his term of actual service was to begin.

In *Wilkie v. Stancil,* 196 N. C., 794, the material facts were these: Gilmers, Incorporated, had employed Stancil as the superintendent of

its store building and had instructed him to go to the building on the evening of holidays for the purpose of turning on the electric lights. While driving his car from his home to the store on a legal holiday he ran over and injured the plaintiff, who brought suit against him and his employer. There was no evidence that the employer exercised any control over his means of going to and from the building. This Court denied recovery against the employer and held that the rule of respondeat superior should not be enlarged to the extent of making the employer liable for the act of an employee while going to or from his place of work in a vehicle of his own selection, over which the employer had no control and in which he had no interest.

This was an action for negligence and the question was whether Stancil at the time of the injury was acting within the scope of his authority; in the present case the question is whether the injury arose out of and in the course of the intestate's employment.

There is highly reputable authority which maintains the proposition that the words "in the course of employment" and "during the period of employment" connote entirely different implications—that there is a difference between the beginning of employment and the beginning of work; that an employee is acting in the course of his employment only when he is doing something he was employed to do or when he is doing something in discharge of a duty which he owes his employer and which is imposed upon him by his contract.

As previously stated the words "in the course of" refer to the time, place, and circumstances under which the accident occurs and the words "out of" to its origin and cause. "Arising out of" means arising out of the work the employee is to do or out of the service he is to perform. The risk must be incidental to the employment. Willis's Workmen's Compensation, 16, *et seq.; Davidson v. M'Robb,* Appeal Cases 1918, 304; 25 Harvard Law Review, 401; Annotation, L. R. A., 1916A, 41; *Conrad v. Foundry Co., supra; Harden v. Furniture Co., supra.* It has accordingly been held that an injury is so received if it occurs while the employee is doing what a man in like employment may reasonably do within a time during which he is so employed and at a place where he may reasonably be during that time. *Larke v. Ins. Co.,* 97 Atl. (Conn.), 320; *Bryant v. Fissell,* 86 Atl. (N. J.), 458.

So, "while there is a difference between the beginning of employment and the beginning of work, or going to work on the employer's time, an accident to a workman on his way to work is not ordinarily in the course of employment." I Honnold on Workmen's Compensation, sec. 107. True, the moment when he begins his work is not necessarily the moment when he gets into the employment, because a reasonable margin must be al-

lowed him to get to the place of work if he is on the premises of the employer or on some access to the premises which the employer has provided. *Davidson v. M'Robb, supra.* "The workman is not regarded to be outside the scope of his employment unless actually at work or in the receipt of wages, nor is he regarded as within it because what he is doing is something which has relation only to his work. The test finally adopted lies between the two. The place at which the injury is sustained becomes the determining factor among those things which he does solely because he is engaged in a particular employment; only those are regarded as in the course of the employment which are done within the master's premises or upon some means of conveyance to or from his place of work which is provided by the master for the sole use of his servants and which the servant is required or entitled to use by virtue of his contract of employment." 25 Harvard Law Review, 403. This is also Honnold's conclusion. He says: "The rule has been established in accordance with sound reason that the employer's liability in such cases depends upon whether the conveyance has been provided by him, after the real beginning of the employment, in compliance with one of the implied or express terms of the contract of employment, for the mere use of the employee, and is one which the employees are required, or as a matter of right are permitted, to use by virtue of that contract. Pursuant to this rule, the employee is in the course of employment if he has a right to the transportation, but not if it is gratuitous, or a mere accommodation. A workman injured while riding to or from his work in the conveyance of a third person is not ordinarily entitled to compensation." Honnold, sec. 110. This is the principle underlying the decision in *Dependents of Phifer v. Dairy,* 200 N. C., 65, to the effect that if an employer furnishes transportation for his employee as an incident of the employment, or as a part of the contract, an injury is compensable if suffered by the employee while going to or returning from the place of work in the vehicle furnished by the employer and under his control.

When injured the plaintiff had not reached the place where he could do any work for his employer; he was not in a car provided by or under the control of his employer; he was not within the ambit of the camp or the sphere of the proposed service; he would have entered upon his work where he would have left it off. The injury, therefore, did not arise out of and in the course of the employment.

Our position is not in conflict with the principle that an injury arises out of and in the course of employment if it is suffered by an employee who after entering upon the service is sent into the streets or upon the highways on his employer's business in performance of his contract.

*Dennis v. White,* Appeal Cases (1917) 479, 15 Neg. Com. Cases, 294; *Kinsman v. Hartford Courant Co.,* 94 Conn., 156; *Bendett v. Mohican Co.,* 98 Conn., 544; *Reese v. Nat. Surety Co., 203* N. W. (Minn.), 442. Nor is it in conflict with the cases cited in the appellant's brief. The judgment of the Superior Court is

Reversed.